WETZSTEIN ET AL., RESPONDENTS, *v.* JOY ET AL., APPELLANTS.

[Argued February 14, 1893.  Decided November 27, 1893.]

ACTION FOR MONEY HAD AND RECEIVED—*Promissory notes—Contract to purchase.*—Where the payee of plaintiff's note accepted the defendant's offer to buy it for a certain sum, but after receiving defendant's check for such amount returned it without having retracted his offer to sell, or objecting to the mode of payment, and defendant, after sending the check, instituted suit on the note, which suit plaintiff settled on the same day by payment in full, and on the following day, the note having been sent for collection to a bank in the town where the plaintiff and defendant resided, the plaintiff voluntarily paid it in full a second time, without any request from the bank, and against the advice of defendant, who offered to indemnify him, he will be limited in his recovery in an action against defendant for money had and received, to the amount of the uncollected check so given by defendant to purchase the note.

*Appeal from Sixth Judicial District, Park County.*

Action for money had and received.  Judgment was rendered for the plaintiff below by HENRY, J.  Modified.

Statement of the case by the justice delivering the opinion.

This action is brought by plaintiffs to recover money alleged to have been had and received by defendants, and belonging to plaintiffs.  The facts are as follows: Mentor Wetzstein, the husband of Sophia, and Allan R. Joy, the husband of Hattie M., are joined as parties with their respective wives.  These husbands acted as agents for their wives throughout all the transactions involved in this litigation.  In October, 1890, one H. W. McLoughlin, of Missoula, held and owned the promissory note of these plaintiffs secured by a mortgage.  The note was for $550, dated January 19, 1889, payable in one year from date.  A. R. Joy was an attorney at law at Livingston, Park county, Montana.  He claims that, as a result of negotiations and correspondence during October, 1890, with Mc-

Loughlin, he bought this note and mortgage for $550, and that he assigned the same to his wife. On October 21st she, by her attorney, A. R. Joy, commenced an action in the district court of Park county for the collection of said note and foreclosure of the mortgage. The complaint in that action was the ordinary one in such a suit. It alleged, among other things, that plaintiff was the owner and holder of said note and mortgage. Summons was served October 21st. On the same day, and at once, Wetzstein went to Joy, and offered to pay, if the claim for attorney's fees was remitted. This was agreed to. He went to his bank, and he and D. A. McCaw, cashier of the bank, went to the clerk of the court, and gave to him McCaw's cashier's check for $671.86, instructing the clerk to give the same to Joy when Joy dismissed the action. This was done the next day. These facts appear by the proceedings and evidence. Almost at once (it does not appear by the record just when) Wetzstein demanded from Joy the return of this money, which was refused. Wetzstein then commenced this action against the Joys.

The complaint in this action sets forth the making of the note and mortgage by the Wetzsteins to McLoughlin, and the bringing of the action against the Wetzsteins above described. It also sets forth that the complaint in *Joy* v. *Wetzstein*, alleged that the note and mortgage had been assigned by McLoughlin to Hattie M. Joy, and that she was the owner and holder of the same. The complaint herein also states that Allan R. Joy, agent of Hattie M. Joy, stated to Mentor Wetzstein the same facts as were set out in the complaint in *Joy* v. *Wetzstein*. The complaint herein says further, that plaintiffs believe the allegations of the complaint in the other case, and the corresponding statements of A. R. Joy, and that the plaintiffs were induced thereby to pay, and did pay, $671.86 to Hattie M. Joy. This complaint then alleges that the allegations of Hattie M. Joy's complaint, and the statements of A. R. Joy, that Hattie M. Joy was the owner of the note and mortgage by assignment, were false, and known to be false to the Joys, and made with intent to deceive; and were not known to the plaintiffs to be false, but were believed by them to be true. The complaint herein says, that in fact the note and mortgage were

never assigned to the Joys, nor had Joy any right to collect the same. It further says that thereafter, on the——day of October, 1890, plaintiff, Sophia Wetzstein, herein, was obliged to pay to McLoughlin the amount due on said note, to wit, $672.06. The complaint demands judgment for $671.86.

The Joys' answer in this case sets out that A. R. Joy did in fact buy the note and mortgage from McLoughlin, and assigned it to his wife, and that she was the owner and holder thereof when she brought the action of *Joy* v *Wetzstein*.

At the close of the trial, and after the introduction of evidence by both sides, plaintiffs moved the court to direct a verdict for plaintiffs on the ground, in effect, that defendants' evidence showed the truth of all the material allegations of the complaint. This motion was granted. The court instructed the jury accordingly, and a verdict was found for plaintiffs for $671.86. Defendants' motion for a new trial was denied. They appeal from that order, and from the judgment. The error assigned is the action of the court in instructing the jury as above noted.

*Allan R. Joy*, and *H. J. Miller*, for Appellants.

I.    There are but three grounds upon which a suit can be maintained to recover back money paid, to wit: Fraud, mistake, duress. (*Lamborn* v. *County Commrs.*, 97 U. S. 181.)

In this case no mistake or duress is claimed; the only allegation relied upon by plaintiffs is fraud.

The only material question here raised is, "Did Hattie M. Joy, plaintiff in the former action, demand more than was believed to be due and just?" If not, there was no fraud, and as to these plaintiffs the matter is *res adjudicata*.

In other words, after the purchasing and paying for property in good faith, is it fraud for the purchaser to publicly declare his ownership, and ask the proper court to enforce his property rights therein?

There was no fraud or misrepresentation of fact.

Misrepresentation must not only be in something material, but it must be something in regard to which the other party places a known trust and confidence in the other. (1 Story's Equity Jurisprudence, sec. 197.)

A judgment will not be set aside on the ground of fraud when the very fraud alleged was tried and passed upon by the issues of the former action, nor when the facts could have been set up as a complete defense in the former action. (*Kelly* v. *Christal*, 81 N. Y. 619.) The fraud must be such that the party was prevented from making his defense. (*United States* v. *Throckmorton*, 98 U. S. 62.) The fraud in obtaining a judgment must be in the fact of its rendition, and not in the support of the issues.

A party who comes into court and simply stands upon his legal rights is guilty of no fraud. (*Ingalls* v. *Miller*, 121 Ind. 189.)

If there was a sale of the note to Joy, his receipt of the money due thereon cannot be questioned.

Where the purchase money is paid, an agreement for sale need not be in writing. (Rev. Stats. Mont., p. 652, §§ 222–24.)

Section 226, page 653, of the Montana Statutes, as to immediate delivery, applies only to creditors of vendor and subsequent purchasers in good faith. Wetzstein does not claim to come within either class, and is barred from pleading this statute.

II. An offer by letter is a continuing one until the letter is received, and for a reasonable time thereafter.

Acceptance may be made at any time before withdrawal.

An acceptance is made and is communicated under this rule when the party receiving this offer puts into the mail his answer accepting it, thus making a complete and binding contract, the specific performance of which courts will enforce.

Offer cannot be withdrawn after letter of acceptance is mailed, and such acceptance is at the risk of the party whose proposition is accepted, whether it arrives in due course of mail or telegraph, correctly or incorrectly, or not at all. (*Trevor* v. *Wood*, 36 N. Y. 307; 93 Am. Dec. 511; *Francis* v. *Barry*, 69 Mich. 311; *Little* v. *Dougherty*, 11 Col. 103; *Darlington Iron Co.* v. *Foote*, 16 Fed. Rep. 646; *Moore* v. *Pierson*, 6 Iowa, 279, 294; 71 Am. Dec. 409; *Allen* v. *Bennett*, 3 Taunt. 169; *Jackson* v. *Lowe*, 1 Bing. 9; *Western Union Tel. Co.* v. *Chicago etc. R. R. Co.*, 86 Ill. 246; 29 Am. Rep.

28; *Moore* v. *Mountcastle,* 61 Mo. 424; *Abbott* v. *Shepard,* 48 N. H. 14; *Barr* v. *Insurance Co. of N. A.,* 61 Ind. 488; *Hallock* v. *Commercial Ins. Co.,* 26 N. J. L. 268; *Hamilton* v. *Lycoming M. I. Co.,* 5 Pa. St. 339; *Durkee* v. *Vermont Cent. R. R. Co.,* 29 Vt. 127; 2 Kent's Commentaries, 477; Gray on Communication by Telegraph, § 115; Scott and Jarnagin on Law of Telegraphs, § 347. See also *Mactier* v. *Frith,* 6 Wend. 103–11; 21 Am. Dec. 262.)

In *Ide* v. *Leiser,* 10 Mont. 6, 24 Am. St. Rep. 17, this court indorsed these views, and held that these contracts could be specifically enforced, the same as contracts of any other nature.

An assignment of a note operates as a constructive delivery, and if the assignor continues in possession after the assignment, he holds it only as agent of the assignee. (1 Daniels on Negotiable Instruments, § 748 *a.*)

Under our statutes the action shall be brought in the name of the real party in interest. (*Davenport* v. *Woodbridge,* 8 Me. 18; *McGee* v. *Riddlesbarger,* 39 Mo. 367; *Grand Gulf Bank* v. *Wood,* 12 Smedes & M. 484; *Ducasse* v. *Keyser,* 28 La. Ann. 419; *Adams* v. *Robinson,* 69 Ga. 628. A verbal sale of property in the hands of a third person with an order for the delivery to the purchaser will enable the purchaser to maintain replevin. (*Planters' etc. Ins. Co.* v. *Tunstall,* 72 Ala. 147; 2 Story's Equity Jurisprudence, 1047.)

III. Wetzstein paid this claim with a full knowledge, or at least means of knowledge, not only of all the facts, but of his own legal rights in the matter; and he cannot now recover it back from the defendants. If he can recover at all, it must be from the one to whom he made such reckless payment. (*Brown* v. *McKinally,* 1 Esp. 279; *Dawson* v. *Remnant,* 6 Esp. 24; *Evans* v. *Gale,* 18 N. H. 400; *Wolfe* v. *Marshal,* 52 Mo. 168; *McMillan* v. *Vischer,* 14 Cal. 240; *Loomis* v. *Pulver,* 9 Johns. 244; *Oceanic S. Nav. Co.* v. *Tappan,* 16 Blatchf. 297; *People* v. *Foster,* 133 Ill. 496; *Prickett* v. *Madison Co.,* 14 Ill. App. 456; *Mays* v. *Cincinnati,* 1 Ohio St. 268–78; *Kraft* v. *Keokuk,* 14 Iowa, 87; *Bailey* v. *Paullina,* 69 Iowa, 463; *Murphy* v. *Creighton,* 45 Iowa, 182; *Cook* v. *Boston,* 9 Allen, 393; *Town of Ligonier* v. *Ackerman,* 46 Ind. 553; 15 Am. Rep. 323,

and cases there cited; *Town Council* v. *Bennett*, 34 Ala. 400, and cases cited; *Lester* v. *Baltimore*, 29 Md. 417; 96 Am. Dec. 542; *Fellows* v. *School District*, 39 Me. 559, and cases cited; *Phillips* v. *Jefferson Co.*, 5 Kan. 417; *Lamborn* v. *County Commrs.*, 97 U. S. 186; *Webber* v. *Aldrich*, 2 N. H. 462; *Taylor* v. *Board etc.*, 31 Pa. St. 75; 72 Am. Dec. 724, and cases cited.

*A. J. Campbell*, and *John J. Smith*, also for Appellants.

I.   Whether or not Mrs. Joy was lawfully entitled to receive payment on the note in controversy at the time she brought her action to foreclose is, we think, the vital question in the case.   If she had such title to the note that a payment to her by the Wetzsteins extinguished their liability on the note, then it is immaterial whether she had the note in actual possession or not when payment was made.   (*McGee* v. *Riddlesbarger*, 39 Mo. 365; *Ide* v. *Leiser*, 10 Mont. 6; 24 Am. St. Rep. 17; 1 Sutherland on Damages, 388.)

McLoughlin's offer to sell the note to A. R. Joy, and Joy's acceptance by letter, inclosing a check for the purchase price, constituted a completed bargain and sale of the note, without any actual delivery of the note.   (Anson on Contracts, p. 30, note 1; Benjamin on Sales, Bennett's ed., book 1, § 54; *Lungstrass* v. *German Ins. Co.*, 48 Mo. 201; 8 Am. Rep. 100.)

In bringing her action, Mrs. Joy anticipated that McLoughlin would forward the note as he agreed, and if any harm was done by her, it resulted wholly from her confidence in McLaughlin's promise, and not from any attempt to injure the Wetzsteins.

The mere allegation in her complaint that she was the owner and holder of the note, if technically untrue in a legal sense, could not, under the circumstances of this case, constitute such fraud as would enable the Wetzsteins to recover back.   Having made a voluntary payment without duress, or even protest, they should have forced the adverse claimants to the note to litigate their rights before paying a second time. In fact, Wetzstein had no right to pay McLoughlin after notice of the assignment to Joy, even though McLoughlin still held possession of the note.   (1 Sutherland on Damages, 388; *Chase* v. *Brown*, 32 Mich. 225.)

II.  Respondent contended in the court below that the check sent by Joy to McLoughlin was not a sufficient compliance with McLoughlin's request to send him a draft.  A check is always a draft, while a draft may not be a check.  (Anderson's Law Dictionary, 173, 381.)  The sending of the check by Joy was a full compliance with McLoughlin's demand. Again, McLoughlin made no objection to the check on that ground, and when not objected to on that ground by him, it constituted a sufficient compliance with his request, and if money had been demanded the check would have been a good tender.  (*Jones* v. *Arthur*, 8 Dowl. Pr. 442; *Mitchell* v. *Vermont etc. Co.*, 67 N. Y. 280; *Walsh* v. *St. Louis Ex. & M. H. A.*, 101 Mo. 534.)  When McLoughlin did not make the objection that it was not a compliance with his contract, Wetzstein could not raise the objection for him.

*Savage & Day*, for Respondents.

I.  An assignee of a mortgage without the assignment of the note secured thereby cannot maintain action of foreclosure. (8 Am. & Eng. Ency. of Law, page 209, and cases cited.) The delivery of a mortgage, unaccompanied by the bond or note, does not transfer the title to the mortgage.  (*Merritt* v. *Bartholick*, 36 N. Y. 44.)  In an action on the note it would have been necessary to have alleged and proved that the plaintiff was the holder of the note.  In New York it is held that where two or more persons claim the ownership of the mortgage, and one of them commences an action to foreclose, it is proper and advisable to make the other claimants parties defendant.  (8 Am. & Eng. Ency. of Law, 231.)  See, also, *Kellogg* v. *Smith*, 26 N. Y. 19, which holds that a person taking an assignment of a mortgage from an assignee who has not possession of the note and mortgage does so at his peril.  To constitute a legal assignment of the mortgage it is essential that the mortgage be delivered accompanied by bond or note secured.  (15 Am. & Eng. Ency. of Law, page 843.)  An equitable assignment of a mortgage is one arising from the transfer of a debt secured, on the theory that the mortgage is but an incident of the debt, and there can be no equitable assignment without a transfer of the note, either by indorse-

ment or by delivery; but where the note is transferred without indorsement, the power of an attorney would be necessary to enforce it. (15 Am. & Eng. Ency. of Law, 844–47.)   A discharge by one claiming to be the assignee of a mortgage, but who is in fact a stranger thereto, and not in possession thereof, is void.   (*De Laureal* v. *Kemper*, 9 Mo. App. 77, cited in Boone on Mortgages, § 154.)

II.   Where one has received the money of another, and has not the right, conscientiously, to retain it, the law imposes interest as damage for the breach of an implied contract to pay it over.   Wherever the plaintiff's money has come into the hands of the defendant, by fraud or imposition, the defendant is liable for interest from the time it is withheld.   (11 Am. & Eng. Ency. of Law, § 397, and notes.)   In an action for the unlawful taking of personal property, interest is to be allowed as a matter of legal right, from the time at which the value is estimated.   (*Hamer* v. *Hathaway*, 33 Cal. 117.)   A party who has fraudulently obtained, or wrongfully detained, the money of another, is liable for interest from the time of his obtaining or detaining the same.   (*Wood* v. *Robbins*, 11 Mass. 504; 6 Am. Dec. 182.)

III.   The statements of appellants that Hattie M. Joy owned the note and mortgage was false.   " Every contracting party, when not in actual fault, has the right to rely upon the express statement of an existing fact, the truth of which is known, or presumed to be known to the other contracting party who made it, and is unknown to the party to whom it is made, when such statement is the basis of mutual agreement. He is under no obligation to investigate and verify the statement to the truth of which the other party to the contract, with knowledge or notice, has deliberately pledged his faith." (Bigelow on Torts. 26.)

IV.   It is well settled upon the broad principles of justice, that a false affirmation made by one man to another with intent to defraud him, and whereby he is damaged, is actionable, no matter whether the party practicing the deceit is benefited or not.   This doctrine has never been shaken.   (*Hunsaker* v. *Sturgis*, 29 Cal. 146.)

In this matter the wrongdoers are benefited to the extent of the amount claimed in the complaint, no consideration therefor.

It is contended by appellants that the respondents are estopped from recovery for the reason that they paid the money over.

The doctrine of estoppel is not applied except to prevent the consummation of fraud. Otherwise it would seem to be a violation of sound morals, a reward and encouragement to fraud, a sword for the destruction of the unwary. (*Franklin* v. *Merida,* 35 Cal. 558; 95 Am. Dec. 129; *Butler* v. *Collins,* 12 Cal. 457.)

DE WITT, J.—The action of the district court in instructing the jury to find for the plaintiffs was, in effect, to take the case away from the consideration of the jury, and for the court to find that plaintiffs had introduced testimony tending to prove the material allegations of the complaint, and that defendants had not introduced testimony tending to contradict the plaintiffs, or tending to establish their defense. The action of the court was in the nature of a nonsuit of the defense, together with a holding that the facts made a case for this plaintiff.

There is no material conflict in the testimony. We will state it as contained in the record, and then determine whether it justified the action of the court. About October 4th, at Livingston, McLoughlin informed Joy that he held the note. and mortgage of the Wetzsteins. It seems that McLoughlin wished to dispose of it. There was then due $121.86 interest. Joy offered $550, which was the face. This was accepted, and McLoughlin told Joy to send the money to Missoula. Joy did not do so for a week. He then wrote to McLoughlin at Missoula, and asked him if he was still willing to take his offer for the note. McLoughlin replied on October 15th as follows: " Yours of the 12th received. In reply will say that you may send me the draft for $550, and take up the note and mortgage." On October 17th Joy sent to McLoughlin, at Missoula, his check for this amount, $550, with his letter accepting the proposition, and requesting McLoughlin to forward the note and mortgage and an assignment. It does not appear that McLoughlin at that time or ever retracted his offer of October 12th. The method of payment by Joy's check was satisfactory to McLoughlin. No objection was ever made by

him to the method of payment, but this check came back to Joy; it does not appear when, or from whom. It was not collected by McLoughlin. It does not appear that it was returned before October 22d. The note and mortgage never came to Joy from McLoughlin. They did come to D. A. McCaw, cashier of the National Park Bank of Livingston, on the morning of October 22d. This was the day after Wetzstein had paid into court, in the presence of McCaw, the McCaw cashier's check to satisfy the note. Wetzstein said that he understood the note and mortgage were in the bank for collection when he paid Joy on October 21st. Now, McCaw had, at the instance of Wetzstein, on October 18th, written to McLoughlin, at Missoula, for the note and mortgage, and Wetzstein had deposited with him, McCaw, $680, to be paid to McLoughlin when he delivered the note and mortgage. It seems that this Wetzstein-McCaw matter was unknown to McLoughlin, at least prior to his receipt, if he did receive it, of McCaw's letter of the 18th. This letter was one day later than the letter of Joy to McLoughlin sending the $550. At one place in his testimony McCaw says that he sent the money to McLoughlin on the 18th, and again it appears that he sent it on the receipt of the note and mortgage, on the 22d. In any event, Wetzstein had deposited the amount with him for the note and mortgage before he, Wetzstein, paid Joy on the 21st. Now, Wetzstein claims that after paying Joy he was obliged to pay the amount the second time, to McLoughlin. As the evidence in the case appears, he was not obliged to do any thing of the kind. Joy told him not to pay to the bank or McLoughlin; that he (Joy, or Mrs. Joy) owned the note, and he would give him (Wetzstein) a $10,000 bond to protect him. McCaw, bank cashier, did not require Wetzstein to pay the note. The fact is that Wetzstein manifested uncommon assiduity in rushing to pay his note a second time, when no one was pushing the payment, and the person to whom he had already paid offered him abundant indemnity. Wetzstein exhibited a fever of liquidation, which is as unusual generally as it is inexplicable in this case. McCaw's conduct also is extraordinary. He prepared his cashier's check, and went with Wetzstein to the clerk of the court, to pay the note on the Joy-Wetzstein suit.

He did this when, as he says, he had sent to Missoula for the note and mortgage at Wetzstein's request, and when he had, as he says, Wetzstein's money in his bank to pay McLoughlin for the note and mortgage.

Now, this peculiar condition of acts and facts plaintiff claimed before the district court established his cause of action against defendant; that is, that defendant Hattie M. Joy was not the owner or holder of the note and mortgage when she commenced the action to foreclose. The court took this view, and ruled accordingly. But we are of opinion that there was not evidence to sustain this position. The contract between Joy and McLoughlin is shown in evidence, and also the payment by Joy to McLoughlin of the $550, by a method which was within the contemplation of the parties, and not objected to by McLoughlin. To be sure, the check of Joy to McLoughlin came back to Joy, but not before Wetzstein had paid Joy. McLoughlin is not in court in this case denying the making of the contract, which Joy testified was made between himself and McLoughlin. But this diligent debtor, Wetzstein, takes it upon himself to say that the Joy-McLoughlin contract was not made. In his anxiety to interpret, or deny, rather, the contract of other parties, he accentuates his views by forcing his money onto McLoughlin. The sole evidence of plaintiff's contention that Joy was not the owner of the note and mortgage is the fact that Wetzstein and McCaw, between them, managed to get the possession or custody of the note and mortgage into McCaw's hands. We are of the opinion that this fact was not evidence that Joy was not the owner, in the face of Joy's testimony as to his contract with McLoughlin, and in the absence of McLoughlin's testimony as to the transaction. It is true that Joy was not the "holder" of the note and mortgage, in the sense of having a manual grasp upon the paper upon which the note was written. But the evidence does not show that he was not the legal holder, and entitled to bring action for its collection.

It is plain that the judgment in this case cannot be affirmed. The case, as it is before us, is a most peculiar one; but, upon a consideration of the undisputed facts, we are of opinion that a modification of the judgment can be made which will do sub-

stantial, and indeed exact, justice between the parties. The situation seems to be as follows: Joy's case, as he presents it, is that he concedes he has $550 in his hands, which sum is the consideration for which he bought the note and mortgage. Upon this sum he makes no claim. It came into his hands in this manner, that is to say: Wetzstein interfered with the Joy-McLoughlin contract, and thrust his money in McLoughlin's hands. Then McLoughlin sends the $550 along to Joy. That amount thus went around the circuit from Wetzstein, through McLoughlin, to Joy. Thus Wetzstein has gotten it into the hands of Joy. It is in Joy's hands under the circumstances that McLoughlin disclaimed it by sending it to Joy, and Joy concedes that he does not own or claim it. Wetzstein claims this amount, and more, too; but, as to this amount—$550—no one says him nay. With these facts and rights and claims of the parties agreed to and admitted, as the case is before us, there seems to be no reason why Wetzstein should not retain his judgment to the extent of $550 against Joy. The case is therefore remanded to the district court, with directions to modify the judgment so that Wetzstein shall recover from Joy $550, without interest.

It is further ordered that the costs be taxed against the respondent Wetzstein, for the reason that this whole controversy arose from respondent's acts in needlessly procuring this $550 to be conveyed into Joy's hands.

*Modified.*

PEMBERTON, C. J., concurs.

HARWOOD, J. (*concurring*).—I am unable to find in this case grounds to support the ruling of the trial court in peremptorily instructing the jury to return a verdict for plaintiff, and thereon entering judgment.

The action is for recovery of money had and received. In answer to the complaint, defendants allege ownership of the chose in action upon which they collected the money in controversy, and allege in detail all the facts concerning the transaction whereby they claim to have purchased from McLoughlin said chose, and transmitted to him payment therefor in fulfillment of their part of said transaction, whereby they claim

to have become the owners and legal holders of said chose; that plaintiff had knowledge of all the details of said transaction when he paid the amount of said debt to McLoughlin, after having paid the same to defendant; and that plaintiff made such payment to McLoughlin, conniving and conspiring with him to defraud defendants.   This answer was entertained as a sufficient defense.

Plaintiffs by reply, denied the allegations of the answer "on information and belief," so far as such averments related to the transaction between McLoughlin and Joy.   Now, upon the trial, defendants introduced proof supporting the allegations of their answer, which proof was not rebutted, McLoughlin not being present as a party or witness to dispute the alleged transaction whereby Joy claims to have purchased said demand; and plaintiff Wetzstein made no attempt to rebut the testimony offered by defendants in support of the allegations of their answer.   Notwithstanding this state of the case, the court, on plaintiffs' motion, instructed the jury to return a verdict against the defendants for the recovery demanded in the complaint.

It is plain that, if the answer alleges a defense (and this is not disputed in any stage of the case, either in argument or by proceeding to strike out the answer or any part thereof), then the ruling of the court practically taking the case from the jury, and summarily determining the issue in favor of plaintiffs, cannot be sustained.

In support of the court's ruling, respondents' counsel argue that it was justified, because the testimony offered in support of defendants' answer showed that defendants were not in actual possession of the note and mortgage when payment thereof was collected from Wetzstein.   There is no averment in the answer that defendants were actually in possession of said chose when the money was collected.   The allegations in that regard were a recital of the facts constituting said transaction between McLoughlin and defendant Joy, whereby, as defendants allege, Hattie M. Joy "became the owner and legal holder of said note and mortgage"; and issue was joined on all these averments by plaintiffs' replication; and when the trial was had, defendants supported their averments by proof.   But

plaintiffs introduced no proof to contradict the showing that defendants had purchased said demand as set forth in the answer and supported by proof, but, apparently conceding those facts, respondents' counsel argue that, inasmuch as said note and mortgage had not been actually assigned and delivered, Joy could not have enforced specific assignment or delivery thereof to him; that his only remedy was an action for damages against McLoughlin for breach of the contract of sale. Plaintiffs' counsel thus admit that McLoughlin had gone so far in the transaction as to commit himself to damage for failure to deliver the chose in question. They practically admit that McLoughlin had sold said demand to Joy, and that Wetzstein had full knowledge of said sale when he interposed to intercept the transaction, and thrust in his payment a second time, as the evidence shows without dispute, relying upon recovery of his first payment from defendants merely, because plaintiff had succeeded in overtaking said note and mortgage outside of defendants' possession. Whether Joy would have obtained possession of the note and mortgage if plaintiff had not taken it up and canceled it, thus destroying the possibility of Joy getting possession, depends possibly upon events as much as upon abstract propositions of law. But, conceding respondents' position that Joy only had an action for damages for McLoughlin's failure to deliver, that action might have brought forth delivery if plaintiff had not wrongfully interposed and made delivery impossible; because McLoughlin, to escape or mitigate damages, might have delivered the thing in question, which, as the case stands, it is admitted Joy had purchased from McLoughlin.

The case is in no position before this court, or the court below, to admit of close legal deductions as to what shape proceedings between Joy and McLoughlin might have taken, or what result might have been attained. It suffices for this decision that plaintiff did not contradict the facts set up in defense, to the effect that by purchase defendants became the legal owners of said demand, and that plaintiff knew that fact when he made payment to McLoughlin. Notwithstanding these conditions, plaintiff, in effect, reached forth, and took the controversy into his own hands, and, not waiting at all to be

drawn into it, made payment to McLoughlin over Joy's claim of ownership, and brought this action to recover the first payment from Joy. And, when he was met in defense by the allegation of the facts constituting the transaction whereby Joy claims to have purchased said demand, he denied those facts "on information and belief"; thus taking upon himself the burden of showing that said transaction had not occurred between Joy and McLoughlin. In this plaintiff signally failed, for Joy supported his answer by proof, and no proof whatever was offered in rebuttal. The mere fact that defendant had not possession of the thing is not sufficient to support plaintiff's action, for one may have the right to a thing or chose and not be in actual possession thereof. Having thus admitted the purchase by Joy, and that plaintiff had actual knowledge of that transaction when he made payment to McLoughlin, plaintiff cannot expect to be sustained in thus attempting to take away from defendants the fruit of their purchase. A strict application of legal principles to the conditions shown in this case would have nonsuited plaintiff, and allowed him no recovery. But on the whole showing it is just that his recovery be limited to the amount paid by Joy to McLoughlin, which, by plaintiff's interference, he got returned to Joy, and his own payment accepted instead. For these reasons I concur.